BRIAN J. STRETCH (CABN 163973)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

ERIN A. CORNELL (CABN 227135)
Special Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    Facsimile: (510) 637-3724
    Erin.Cornell@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. CR 15-00585 PJH |
|---|---|---|
| Plaintiff, | ) ) | UNITED STATES' SENTENCING MEMORANDUM |
| v. | ) ) | Date: May 18, 2016 |
| ANTOINE FORD, | ) ) | Time: 1:30 p.m. |
| Defendant. | ) ) | Honorable Phyllis J. Hamilton |

**INTRODUCTION**

The United States of America respectfully requests this Court to sentence the defendant, Antoine Ford, to: (1) serve 15 months in prison, representing the low-end of the applicable United States Sentencing Guidelines range for Offense Level 7 and Criminal History Category VI; (2) serve three years of supervised release with a special search condition; and (3) pay a $100 special assessment. The requested sentence is fair and reasonable on this record where, following his furlough from federal prison, the defendant failed to return to a residential reentry center in Oakland after being granted a community pass, in violation of 18 U.S.C. §§ 751(a) and 4082(a). The requested sentence is sufficient but not greater than necessary to meet the goals of sentencing in this case.

UNITED STATES' SENTENCING MEMORANDUM
CR 15-00585 PJH

# BACKGROUND

On February 6, 2009, the defendant was sentenced to a term of 51 months in the custody of the Bureau of Prisons ("BOP") and to three years of supervised release following his conviction for being a felon in possession of a firearm and/or ammunition in violation of 18 U.S.C. § 922(g)(1) (N.D. Cal. Case No. CR 08-00558 DLJ).

The defendant's term of supervised release began on September 27, 2013.  Two months later, on November 27, 2013, the probation department filed a Petition for Arrest Warrant for Offender Under Supervision, alleging that the defendant violated the terms of his supervised release when, on November 25, 2013, he committed a residential burglary in Berkeley, in violation of California Penal Code § 459, a felony.  On February 21, 2014, probation filed an Amended Petition for Arrest Warrant for Offender Under Supervision (hereinafter "the Form 12"), expanding the charge involving the November 25, 2013 burglary to include a second attempted burglary at the same residence on November 26, 2013, as well as adding a second charge arising out of the defendant's possession of a firearm and ammunition, and possession of an assault weapon, in the commission of the aforementioned residential burglary.  The defendant admitted the first charge in the Form 12 and on March 21, 2014, he was sentenced to a term of 21 months in prison and 15 months of supervised release.

Most recently, the defendant was serving his prison term at the United States Penitentiary in Atwater, California.  On March 27, 2015, the BOP transferred the defendant from physical custody at the prison to a lesser form of custody at the Geo Care Companies, Inc. Residential Re-entry Center ("RRC") in Oakland to complete the remainder of his term.  While being processed at the RRC, the defendant signed a series of forms, including an agreement to abide by the rules and regulations promulgated by the RRC.  The forms also included the defendant's written acknowledgment that he was in the custody of the United States Attorney General.  The RRC sets out rules that dictate when a resident is permitted to leave the RRC.

The defendant was due to be released from the RRC on August 23, 2015.  On June 27, 2015, he was granted a Community Pass to visit Fuller Funeral Home at 4647 International Boulevard in Oakland, starting at 11:00 a.m.  The in/out logs show that the defendant checked out of the RRC around 11:00 a.m.  He was supposed to return to the RRC by 9:00 p.m.  When he had not returned, RRC staff

1  contacted him and gave him an extension of time to return until 9:30 p.m.  The defendant never

2  returned.  On or about November 12, 2015, he was apprehended.

3        On December 17, 2015, the Grand Jury returned a single-count indictment, charging the

4  defendant with escaping from custody in violation of 18 U.S.C. §§ 751(a) and 4082(a).  On February 10,

5  2016, the defendant entered a guilty plea.  (ECF No. 12.)

## ARGUMENT

### A.    The Parties Agree that the Defendant's Offense Level is 7

The parties and the United States Probation Officer agree that the proper offense level calculation is as follows:

    a.  <u>Base Offense Level</u>:    13
        (U.S.S.G. § 2P1.1(a)(1) – confinement by virtue of a conviction.)

    b.  <u>Specific Offense Characteristics</u>:    -4
        (U.S.S.G. § 2P1.1(b)(3) – escape from a non-secure custody.)

    c.  <u>Acceptance of Responsibility</u>:    -2

    d.  <u>Adjusted Offense Level</u>:    7

(Plea Agreement at ¶ 7, PSR at pp. 5.)

### B.    The Defendant's Criminal History Category is VI

The United States concurs with the United States Probation Officer's conclusion that the defendant's Criminal History Category is VI.  *See* PSR at ¶ 34.  On April 9, 2002, the defendant was sentenced to three years in prison and five years' probation following a conviction for possessing cocaine base for sale, a felony, in violation of California Health & Safety Code ("H&S") § 11351.5.  *See* PSR at ¶ 26.  This sentence falls within the applicable 15-year time period, yielding 3 criminal history points.  *See* U.S.S.G. §§ 4A1.1(a) and 4A1.2(e)(1).

On April 10, 2003, the defendant was sentenced to 99 days in jail and five years' probation following a conviction for transportation of a controlled substance, a felony, in violation of H&S § 11352(a).  *See* PSR at ¶ 27.  This sentence falls outside the applicable 10-year time period and therefore yields no criminal history points.  *See* U.S.S.G. §§ 4A1.1(b) and 4A1.2(e)(2).

On March 23, 2005, the defendant was sentenced to six months in jail following a conviction for driving under the influence of alcohol, a misdemeanor, in violation of California Vehicle Code

§ 23152(b). *See* PSR at ¶ 28. This sentence falls outside the applicable 10-year time period and therefore yields no criminal history points. *See* U.S.S.G. §§ 4A1.1(b) and 4A1.2(e)(2).

On September 8, 2006, the defendant was sentenced to two years in prison following a conviction for being a felon in possession of a firearm and/or ammunition, a felony, in violation of California Penal Code ("PC") § 12021(a)(1). *See* PSR at ¶ 29. This sentence falls within the applicable 15-year time period, yielding 3 criminal history points. *See* U.S.S.G. §§ 4A1.1(a) and 4A1.2(e)(1).

On February 6, 2009, the defendant was sentenced to 51 months in prison and 3 years of supervised release following a conviction for being a felon in possession of a firearm and/or ammunition, a felony, in violation of 18 U.S.C. § 922(g)(1). *See* PSR at ¶ 30. This sentence falls within the applicable 15-year time period, yielding 3 criminal history points. *See* U.S.S.G. §§ 4A1.1(a) and 4A1.2(e)(1).

On January 13, 2014, while on supervised release, the defendant was sentenced to 158 days in jail and 5 years' probation following a conviction for being an accessory (arising out of the November 2013 residential burglaries), a felony, in violation of PC § 32. *See* PSR at ¶ 31. This sentence falls within the applicable 10-year time period, yielding 2 criminal history points. *See* U.S.S.G. §§ 4A1.1(b) and 4A1.2(e)(2). The defendant was subsequently sentenced to 21 months in prison and 15 months of supervised release for this violation of his supervised release.

The defendant was also on supervised release when he committed the instant offense, which adds 2 criminal history points. U.S.S.G. § 4A1.1(d).

Accordingly, the defendant has 13 criminal history points, giving him a Criminal History Category of VI. As set forth above, the Offense Level is 7; therefore, the defendant's resulting sentencing range is 15 to 21 months.

**C.  15 Months in Prison is a Reasonable Sentence**

**1.  Applicable Law**

The Court should impose a sentence that is sufficient, but not greater than necessary, to reflect the purposes of sentencing as identified by Congress in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct Guidelines range. *Id.* Although the Guidelines are not binding, they

"reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 350 (2007).

The Guidelines range will be the starting point and initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the Guidelines range in mind throughout the process, let the parties argue for a sentence they believe is appropriate, and consider the factors identified in section 3553(a). *Id.* If the Court imposes a sentence outside the Guidelines range, it must consider the extent of the deviation and ensure that its justification for deviating from the range is sufficiently compelling to support the degree of variance in the sentence that it imposes. *Id.*

### 2. The Section 3553(a) Factors Support a Sentence of 15 Months Imprisonment

Given the defendant's serious criminal history and his failure to turn himself in following his escape, the government believes that a sentence of 15 months' imprisonment, representing the low-end of the Guidelines range, is reasonable and necessary, as explained below.

#### a. The Nature and Circumstances of the Offense and History and Characteristics of the Defendant

##### i. Nature and Circumstances

The nature and circumstances of the defendant's offense warrants a term of imprisonment at the low-end of the applicable Guidelines range. The defendant was serving a 21-month sentence for a violation of his supervised release (imposed in conjunction with a 51-month sentence for being a felon in possession of a firearm) at the time he failed to return to the RRC. The defendant was granted a Community Pass to leave the RRC for the day. Instead of returning to the RRC at the designated time (9:00 p.m.), as he had been trusted to do (even being granted a short extension of time to return), he chose not to return and remained at large in the community for approximately four and one-half months.

The defendant now states that he feared for his safety at the RRC. There is no indication in the record that the defendant ever voiced his concerns over his safety to anyone while he resided at the RRC or while he was at large. The defendant's actions demonstrate an abuse of trust, a complete lack of remorse and an inability to follow the law, warranting a sentence within the Guidelines range. The government therefore recommends a sentence of 15 months' imprisonment.

### ii. Characteristics of the Defendant

The defendant has a significant criminal history spanning at least 14 years, resulting in him having the highest Criminal History Category available – VI.  The defendant's history includes two drug offenses (one for possession for sale and another for transporting), as well as a DUI and two felon in possession convictions.  The defendant's second felon in possession conviction arose out of an attempt to enter the locked vehicle of a stranger's car and then attempting to hide a firearm in the car's wheel well.  While out on supervised release for this conviction, the defendant was involved in two residential burglaries of the same.  When the defendant was unable to obtain what he was looking for from the house (in which the resident was sleeping at the time), he returned the next night to burglarize the house a second time.  At that time a rifle was found in the car from which the defendant had come.

This behavior is consistent with the defendant's past, significant criminal history, discussed above and as noted in the PSR, multiple parole violations and one supervised release violation.  The defendant has also served three prior prison terms.  This behavior is completely inconsistent with the defendant's upbringing which, according to the PSR, was positive, and he continues to have the support of his family.  While the government acknowledges that the defendant turned himself in after he was mistakenly released by the Marshals during the pendency of this case, the defendant presented and continues to present as a danger to the community and as a person who is unable to follow court orders and the rules of his parole and probation officers.  Accordingly, the government submits that a sentence of 15 months' imprisonment is appropriate.

### b. Deterrence of Criminal Conduct and Need to Protect the Public

The remaining factors under section 3553(a) also support a 15-month term of imprisonment.  The need to deter the defendant, and generally deter others, from escaping from custody, is a compelling sentencing factor in this case.  Specifically as to the defendant, the record shows that rather than serve the remainder of his sentence, he instead abused the trust he had been given and remained at large for four and one-half months.  At no time while he was at large did he seek to turn himself in.

More generally, prisoners are routinely furloughed to serve the remainder of their sentences in RRC's and are trusted to abide by the rules and regulations of the RRC, pursuant to a written agreement.  By imposing a sentence within the Guidelines range, the Court can send a message of general deterrence

to other would-be escapees that the consequences of escaping from custody include a significant prison term, consistent with the applicable Guidelines.

The need to protect the public is, likewise, a relevant sentencing factor. As noted above, the defendant's criminal history includes two drug offenses, a DUI, two felon in possession convictions, and a conviction for accessory arising out of a residential burglary (while he was on supervised release). This factor, therefore, also counsels in favor of a sentence within the Guidelines range.

### c.     Avoiding Sentencing Disparities

For the reasons set forth above, the defendant should be held to the same Guidelines-based consequences of other criminals. Therefore, this sentencing factor also weighs in favor of a sentence within the Guidelines range.

### CONCLUSION

For the foregoing reasons, the United States of America respectfully requests this Court to sentence the defendant to: (1) serve 15 months in prison, representing the low-end of the applicable Guidelines range for Offense Level 7 and Criminal History Category VI; (2) serve three years of supervised release with a special search condition; and (3) pay a $100 special assessment.

DATED: May 11, 2016                                          Respectfully submitted,

BRIAN J. STRETCH
United States Attorney


                                                             /s/
                                                             ERIN A. CORNELL
                                                             Special Assistant United States Attorney